**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**EDWARD DORSEY, JR.**                                    **CIVIL ACTION**

**VERSUS**                                                            **NO. 15-1528**
                                                                            **C/W 15-1723**

**UNITED RENTALS NORTH AMERICA, INC., et al.**        **SECTION "G"(4)**

## ORDER

Before the Court are The P.R. Skate, LLC's ("P.R. Skate") "Motion for Summary Judgment of Liability Against Arch Specialty Insurance Company"[1] and Arch Specialty Insurance Company's ("Arch") "Cross-Motion for Partial Summary Judgment as to the Declaratory Judgment and Cross-Claim of the P.R. Skate, L.L.C."[2] Having reviewed the motions, the memoranda in support, the memoranda in opposition, the record, and the applicable law, the Court will grant each motion in part and deny each motion in part.

## I. Background

### A.    *Factual Background*

This litigation arises out of an industrial accident, which occurred on April 19, 2014, at the Wal-Mart Supercenter in Cut Off, Louisiana.[3] Arch issued a policy of commercial general liability coverage to P.R. Skate as the named insured, effective November 27, 2013, to November 27, 2014.[4] In 2013, P.R. Skate contracted with Wal-Mart Stores, Inc. ("Wal-Mart Stores") to remodel

---

[1] Rec. Doc. 155.

[2] Rec. Doc. 220.

[3] *See* Rec. Docs. 56, 70.

[4] *See* Rec. Doc. 220-7.

the Wal-Mart Supercenter in Cut Off, Louisiana.[5] To perform the physical remodeling work at the Wal-Mart Supercenter, P.R. Skate subcontracted with Sartin Builders, LLC ("Sartin").[6] Sartin subsequently subcontracted "some or all of its work" to another contractor, Affordable Painting.[7] Plaintiff Edward Dorsey, Jr., and his son Plaintiff Edward Blair Dorsey (collectively, "Plaintiffs") were employed by Affordable Painting.[8]

On April 11, 2014, P.R. Skate rented a scissor lift from United Rentals North America, Inc. ("United Rentals").[9] On April 19, 2014, Plaintiffs were injured when they both fell from the scissor lift.[10] The scissor lift was manufactured by Skyjack, Inc. ("Skyjack").[11]

### B.      *Procedural Background*

On December 19, 2014, Edward Dorsey, Jr. filed suit against United Rentals and Liberty Mutual Insurance Company ("Liberty Insurance") in the Thirty-Second Judicial District Court, Parish of Terrebonne.[12] On April 28, 2015, Edward Blair Dorsey also filed suit against United Rentals and Liberty Insurance in the Thirty-Second Judicial District Court.[13] On May 8, 2015, United Rentals and Liberty Insurance removed Edward Dorsey, Jr.'s state court action to this Court.[14] On May 21, 2015, United Rentals and Liberty Insurance removed Edward Blair Dorsey's

---

[5] Rec. Doc. 155-3 at 1; Rec. Doc. 220-3 at 1.

[6] *Id.*

[7] Rec. Doc. 155-3 at 1; Rec. Doc. 220-3 at 2.

[8] *Id.*

[9] Rec. Doc. 155-3 at 2; Rec. Doc. 155-4 at 141–43.

[10] *Id.*

[11] *Id.*

[12] Rec. Doc. 1-2.

[13] *See* Civ. A. No. 15-1723, Rec. Doc. 1-2.

[14] *See* Rec. Doc. 1.

action to this Court.[15] Plaintiffs later dismissed Liberty Insurance without prejudice.[16] On June 25, 2015, both cases were consolidated.[17]

On May 29, 2015, United Rentals filed third party complaints against P.R. Skate and P.R. Skate's insurer Arch.[18] On October 6, 2015, the Court granted Edward Dorsey, Jr. leave to file a first amended complaint, which added a claim against Wal-Mart Louisiana, LLC ("Wal-Mart Louisiana").[19] On November 3, 2015, the Court granted P.R. Skate leave to file a crossclaim and request for declaratory judgment against Arch.[20] On November 3, 2015, the Court granted Edward Dorsey, Jr. leave to file a second amended complaint adding claims against P.R. Skate, Arch, and Skyjack.[21] On November 3, 2015, the Court granted Edward Blair Dorsey leave to file a first amended complaint adding claims against Wal-Mart Stores, Inc. ("Wal-Mart Stores"), P.R. Skate, Arch, and Skyjack.[22] On December 29, 2015, the Court granted United Rentals leave to file an amended answer and crossclaim against Skyjack.[23] On March 4, 2016, the Court granted P.R. Skate leave to file its request for declaratory judgment and third-party demand against its subcontractor Sartin and Sartin's insurer Western World Insurance Company.[24]

---

[15] *See* Civ. A. No. 15-1723, Rec. Docs. 1 & 3.

[16] *See* Rec. Doc. 6; *see also* Civ. A. No. 15-1723, Rec. Doc. 14.

[17] *See* Rec. Doc. 17.

[18] *See* Rec. Docs. 10; *see also* Civ. A. No. 15-1723, Rec. Doc. 6.

[19] Rec. Docs. 55–56.

[20] Rec. Docs. 64–65.

[21] Rec. Docs. 67–68.

[22] Rec. Docs. 69–70.

[23] Rec. Docs. 86–89.

[24] Rec. Docs. 144, 146.

On March 23, 2016, the Court granted an unopposed motion to dismiss the claims filed against Wal-Mart Louisiana and Wal-Mart Stores.[25] On January 25, 2016, the Court was notified that all parties had reached a settlement with Plaintiff Edward Blair Dorsey, and the Court issued an Order dismissing his case.[26] On February 2, 2017, the parties filed a joint stipulation dismissing all claims against Skyjack with prejudice.[27]

On March 15, 2016, P.R. Skate filed a motion seeking summary judgment on the issue of liability as to the following crossclaims against Arch: (1) breach of contract; (2) insurance bad faith; (3) violation of the Washington Insurance Fair Conduct Act; and (4) violation of the Washington Consumer Protection Act.[28] On April 12, 2016, Arch filed its opposition to P.R. Skate's motion.[29] On April 27, 2016, with leave of Court, P.R. Skate filed a reply memorandum in further support of its motion for summary judgment.[30] On April 28, 2016, with leave of Court, P.R. Skate filed a sur-reply memorandum in further support of its motion for summary judgment.[31] In its sur-reply, P.R. Skate confirms that pursuant to an agreement among the parties, it "merely seeks determination of whether summary judgment is warranted on P.R. Skate's crossclaim against Arch for breach of contract by breach of the duty to defend P.R. Skate and breach of the contractual duty to accept the additional insured status of United Rentals and Wal-Mart."[32] Accordingly, the

---

[25] Rec. Doc. 182.

[26] Civ. A. No. 15-1723, Rec. Doc. 18.

[27] Rec. Doc. 345.

[28] Rec. Doc. 155.

[29] Rec. Doc. 221.

[30] Rec. Doc. 266.

[31] Rec. Doc. 267.

[32] *Id.* at 3.

breach of contract issue is the only issue currently before the Court. On May 7, 2016, with leave

of Court, Arch filed a sur-reply memorandum in response to the reply memorandum filed by P.R.

Skate.[33]

On April 12, 2016, Arch filed a cross-motion for summary judgment.[34] On April 19, 2016,

P.R. Skate filed an opposition to Arch's motion.[35] On May 13, 2016, with leave of Court, Arch

filed a reply memorandum in further support of its cross-motion for summary judgment.[36]

## II. Parties' Arguments

### A.  *P.R. Skate's Arguments in Support of its Motion for Summary Judgment*

P.R. Skate seeks summary judgment against Arch on two breach of contract claims.[37] First,

P.R. Skate argues that Arch breached a contractual duty to defend P.R. Skate against Plaintiffs'

claims for bodily injury.[38] Second, P.R. Skate asserts that Arch breached a contractual duty to

accept the additional insured status of United Rentals and Wal-Mart.[39] P.R. Skate asserts

Washington law applies to the dispute between it and Arch.[40]

### 1.  Whether Arch has a Duty to Defend P.R. Skate against Plaintiffs' Claims for Bodily Injury

According to P.R. Skate, Arch issued an insurance policy which covers all sums that P.R.

Skate became legally obligated by pay for "personal injury" or "property" damage, and to defend

---

[33] Rec. Doc. 279.

[34] Rec. Doc. 220.

[35] Rec. Doc. 236.

[36] Rec. Doc. 280.

[37] Rec. Doc. 155-1.

[38] *Id.*

[39] *Id.*

[40] *Id.* at 6.

P.R. Skate against such claims.[41] P.R. Skate argues that it cannot be disputed that Plaintiffs' claims are within the grant of coverage under the insurance policy.[42] In order for Arch to establish that the policy does not apply to Plaintiffs' claims, P.R. Skate argues that Arch must "show that the loss is excluded by specific policy language."[43] P.R. Skate contends that Arch's sole basis for denying P.R. Skate a defense is the "Employer's Liability Exclusion" contained in the insurance policy.[44]

P.R. Skate represents that the "Employer's Liability Exclusion" excludes from coverage bodily injuries to the following groups of people: (1) employees of P.R. Skate who are injured in the course of employment or while performing duties related to the conduct of the business; (2) spouses, children, parents, brothers or sisters of employees; and (3) subcontractors or any employees of subcontractors.[45] The provision defines "subcontractor" as "any worker, including, but not limited to, a temporary worker, casual laborer, borrowed worker, servant or independent contractor, who is not an 'employee' of the insured."[46]

P.R. Skate contends that Plaintiffs are not employees of P.R. Skate nor are Plaintiffs related to any P.R. Skate employees that were injured.[47] Further, P.R. Skate argues that the subcontractor exclusion does not apply because Affordable Painting was a subcontractor of Sartin, not P.R.

---

[41] *Id.* at 10.

[42] *Id.*

[43] *Id.* (quoting *McDonald v. State Farm Fire and Cas. Co.*, 837 P.2d 1000, 1004 (1992)).

[44] *Id.* at 11.

[45] *Id.*

[46] *Id.*

[47] *Id.*

Skate.[48] P.R. Skate asserts that the definition of "subcontractor" in the insurance policy is vague and ambiguous because the term "worker" is not defined.[49] P.R. Skate cites Webster's II New College Dictionary, which defines "worker" as "[o]ne that works . . . [o]ne who does manual or industrial labor . . . [or a] member of the working class."[50] P.R. Skate contends that reading the provision as a whole indicates that the word "worker" means an individual "working for and under the direction and control of" P.R. Skate, and therefore the term "subcontractor" should be "interpreted to be someone working for the insured, not simply someone who works."[51] P.R. Skate argues that its proposed definition "is the only 'fair, reasonable, and sensible construction' that comports with how the average purchaser of insurance would view the policy."[52] Moreover, P.R. Skate asserts that this definition is "consistent with the common understanding of a 'subcontractor' as someone who has a contractual relationship, whether written or oral, with the primary contractor for whom he or she works."[53] P.R. Skate also cites *Wellington Specialty Ins. Co. v. Ling*, a case from the Northern District of Texas, to support this interpretation.[54] Finally, P.R. Skate asserts that the title of the exclusion, "Employer's Liability Exclusion," suggests that the exclusion applies to P.R. Skate's liability for those who it employs.[55] P.R. Skate contends that Arch's interpretation of

---

[48] *Id.*

[49] *Id.* at 11–12.

[50] *Id.* at 12 (quoting Webster's II New College Dictionary, at 1271 (Houghton Mifflin Company 1995)).

[51] *Id.* at 13.

[52] *Id.* (quoting *Grange Ins. Co. v. Brosseau*, 776 P.2d 123, 125 (Wash. 1989)).

[53] *Id.*

[54] *Id.* at 14 (citing No. 3:08-CV-738-L, 2009 WL 2136399 (N.D. Tex. Jul. 17, 2009)).

[55] *Id.* at 15 (citing *Diamond "B" Constructors, Inc. v. Granite Falls School Dist.*, 70 P.3d 966, 968–69 (Wash. Ct. App. 2003)).

the provision is far broader and "effectively an exclusion of all liability for any personal injuries."[56] Accordingly, because the "Employer's Liability Exclusion" does not apply, P.R. Skate argues that Arch breach its duty to defend P.R. Skate.[57]

### 2.   Whether Arch has a Duty to Defend United Rentals and Wal-Mart as Additional Insureds under the Blanket Additional Insured Endorsement

Finally, P.R. Skate asserts that Arch breached its contractual duty to P.R. Skate to defend United Rentals and Wal-Mart as additional insureds under the policy.[58] P.R. Skate notes that Arch denied tenders on behalf of United Rentals and Wal-Mart based on its assertion that neither was an additional insured under the policy.[59] P.R. Skate avers that Arch maintains that the additional insured endorsement required that the complaints allege the negligence of P.R. Skate.[60] P.R. Skate contends that Arch's position is incorrect.[61] According to P.R. Skate, the Blanket Additional Insured Endorsement provides additional insurance coverage to "those persons or organizations who are required under a written contract with [P.R. Skate] to be named as additional insureds, but only with respect to liability for 'bodily injury' . . . caused, in whole or in part, by [P.R. Skate's] acts or omissions or the acts or omissions of [P.R. Skate's] subcontractors. . . ."[62] P.R. Skate contends that under Washington law where "the policy language does not require an adversarial claim or a third party threat or a formal threat of legal action" courts will not interpret a policy to

---

[56] Id.

[57] Id. at 16.

[58] Id. at 19.

[59] Id.

[60] Id.

[61] Id.

[62] Id. at 20.

require that a claim be filed before the duty to defend arises.[63] P.R. Skate contends that it committed an "act" when it rented the scissor lift for use at the Wal-Mart Supercenter in Cut Off, Louisiana. [64] According to P.R. Skate, while this act was not negligent, but for that act, Plaintiffs' "accident would not have happened and neither United Rentals nor Wal-Mart would be facing any liability for it."[65] Accordingly, P.R. Skate contends that "Arch's position in denying coverage to United Rentals and Wal-Mart was directly contrary to settled Washington law and, therefore, unreasonable as a matter of law."[66] P.R. Skate asserts that Arch's breach of the insurance policy harmed P.R. Skate by causing United Rentals to sue P.R. Skate and by obligating P.R. Skate to accept Wal-Mart's tender of defense to avoid being sued by Wal-Mart.[67]

**B.**    ***Arch's Arguments in Opposition to P.R. Skate's Motion for Summary Judgment and in Support of Its Motion for Summary Judgment***

In opposition, Arch adopts all arguments and evidence cited in support of its cross-motion for summary judgment.[68] Arch seeks partial summary judgment in its favor dismissing P.R. Skate's "Request for Declaratory Judgment and Cross-Claim" and P.R. Skate's "First Amended Request for Declaratory Judgment and Cross-Claim."[69] Additionally, Arch seeks dismissal of P.R. Skate's claims related to the defense and indemnity of P.R. Skate.[70] Arch asserts that the Court

---

[63] *Id.* (citing *Weyerhaeuser Co. v. Aetna Cas. and Surety Co.*, 874 P.2d 142, 154 (Wash. 1994); *Zurich Am. Ins. Co. v. Certain Underwriters at Lloyd's London*, No. C12-5749 RJB, 2013 WL 3208566, *1–2 (W.D. Wash. June 24, 2013)).

[64] *Id.* at 21.

[65] *Id.*

[66] *Id.* (citing *Weyerhaeuser*, 874 P.2d at 154).

[67] *Id.* at 22.

[68] Rec. Doc. 221.

[69] Rec. Doc. 220 at 1.

[70] *Id.*

should dismiss P.R. Skate's declaratory relief claims regarding the defense and/or indemnity of United Rentals and Wal-Mart.[71] Finally, Arch seeks dismissal of any claims by P.R. Skate for defense or insurance coverage for the contractual claims asserted by United Rentals or Wal-Mart against P.R. Skate.[72]

Arch states that for the purposes of this motion it "will assume Washington law applies to the interpretation of the Policy, although Arch does not concede this point."[73] Arch contends that there are no disputed issues of material fact which would prevent the Court "from reaching a determination as to whether a duty to defend or to indemnify is owed to P.R. Skate, United Rentals or Wal-Mart for the personal injury claims of [Plaintiffs], the employees of P.R. Skate's subcontractor."[74]

### 1.      Whether Arch has a Duty to Defend P.R. Skate against Plaintiffs' Claims for Bodily Injury

Arch asserts that "the Employer's Liability Exclusion Endorsement precludes coverage for P.R. Skate because the 'bodily injury' alleged by the Plaintiffs is to employees of a subcontractor."[75] Arch argues that Plaintiffs were employees of Affordable Painting, a subcontractor of Sartin, which was a subcontractor of P.R. Skate.[76] Arch contends that all work being performed at the Wal-Mart location was based on the initial contract between P.R. Skate and

---

[71] *Id.*

[72] *Id.* at 2.

[73] *Id.* at 5.

[74] *Id.* at 5–6.

[75] *Id.* at 9.

[76] *Id.* at 10–11.

Wal-Mart, meaning that "all work being performed was by employees working on portions of the P.R. Skate/Wal-Mart contract."[77]

Arch argues that the insurance policy's definition of the term "subcontractor" is unambiguous and precludes coverage for P.R. Skate in this matter.[78] Arch asserts that the policy does not require that a subcontractor relationship exist between P.R. Skate and Affordable Painting in order for the exclusion to preclude coverage.[79] Nonetheless, Arch argues that such a relationship did exist because Affordable Painting was performing a portion of the work detailed in the P.R. Skate/Wal-Mart contract.[80] Arch asserts that the policy's definition of the term subcontractor "includes any workers, including temporary or casual workers, who are not an 'employee' of the insured."[81]

Arch notes that the "Exposed Work Area Limitation Endorsement" of the policy defines a subcontractor as "any person or organization who is not an 'employee' of the insured and does work or perform services for or on behalf of an insured."[82] Arch contends that "[u]nlike the broader definition in the Employer's Liability Exclusion, this definition limits the term subcontractor to those who are performing services for or on behalf of an insured."[83] Arch argues that "[t]he omission of this language from the Employer's Liability Exclusion demonstrates that the exclusion precludes coverage not only for employees of a named insured but also for any other class of

---

[77] *Id.* at 11.

[78] *Id.*

[79] *Id.*

[80] *Id.*

[81] *Id.* at 12.

[82] *Id.*

[83] *Id.*

worker on a job site, whether the worker was directly hired by, indirectly hired by, or not related to employment with the named insured at all."[84] Arch asserts that all of the work performed at Wal-Mart was ultimately on behalf of P.R. Skate pursuant to subcontracts, and the work was done to fulfill P.R. Skate's responsibilities under its contract with Wal-Mart.[85] Accordingly, Arch contends that Plaintiffs were employees of a subcontractor performing work subcontracted from the P.R. Skate/Wal-Mart contract.[86] Because the insurance policy excludes coverage for bodily injury claims of employees of subcontractors, Arch argues that there is no duty to defend or indemnify P.R. Skate with respect to Plaintiffs' personal injury claims.[87]

### 2. Whether Arch has a Duty to Defend United Rentals and Wal-Mart as Additional Insureds under the Blanket Additional Insured Endorsement

Arch notes that the insurance policy contained a "separation of insureds clause" which states that the policy applies "[a]s if each Named Insured were the only Named Insured; and [s]eparately to each insured against whom claim is made or 'suit is brought.'"[88] According to Arch, it did not contract with P.R. Skate to provide additional insured coverage to United Rentals or Wal-Mart.[89] Arch contends that it contracted with P.R. Skate to include the additional insured endorsement on the policy, and whether the policy provides coverage to an insured is between Arch and the putative insureds, United Rentals and Wal-Mart.[90] Arch notes that neither United Rentals nor Wal-Mart brought claims against Arch asserting that a duty to defend or indemnify

---

[84] *Id.* at 12–13.

[85] *Id.* at 14.

[86] *Id.*

[87] *Id.*

[88] *Id.* at 14–15.

[89] *Id.* at 15.

[90] *Id.*

was breached.[91] Accordingly, Arch argues that P.R. Skate does not have standing to bring such a claim.[92]

Even assuming that P.R. Skate could bring this claim, Arch argues that under the original complaints neither United Rentals nor Wal-Mart qualified as an additional insured on the insurance policy.[93] Arch notes that it did provide a defense to United Rentals and Wal-Mart retroactive to November 3, 2015, the date that the second amended complaint was filed adding P.R. Skate as a defendant, and October 6, 2015, the date that the first amended complaint was filed adding Wal-Mart as a defendant, respectively.[94] Arch states that the original complaints alleged that the "sole and proximate cause of the injuries and damages sustained by [Plaintiffs'] was the negligence of the defendant, United Rentals. . . ."[95] Arch contends that under the insurance policy United Rentals and Wal-Mart can be insureds "only with respect to liability for 'bodily injury' . . . caused, in whole or in part, by [P.R. Skate's] acts or omissions or the acts or omissions of [P.R. Skate's] subcontractors. . . ."[96] Arch argues that the policy required that the complaints allege that Plaintiffs' bodily injuries were caused, in whole or in part, by P.R. Skate's acts or omissions, or the acts or omissions of P.R. Skate's subcontractors, in order for the additional insured endorsement to be triggered.[97]

---

[91] *Id.*

[92] *Id.* at 14–15.

[93] *Id.* at 15.

[94] *Id.*

[95] *Id.* at 16.

[96] *Id.*

[97] *Id.* at 17.

Finally, Arch notes that P.R. Skate's request for a declaratory judgment seeks a judgment requiring Arch to defend and indemnify P.R. Skate in connection with the contractual claims asserted against P.R. Skate by United Rentals and Wal-Mart by virtue of P.R. Skate's contracts with those entities.[98] Arch asserts that the policy unambiguously excludes coverage for bodily injury claims which P.R. Skate "may be obligated to pay by reason of the assumption of liability in a contract agreement unless the assumption of liability was part of the 'insured contract' under the policy."[99] Arch asserts that P.R. Skate's rental agreement with United Rentals was for rental of the scissor lift, and P.R. Skate's contract with Wal-Mart was a construction agreement.[100] Therefore, Arch contends that neither agreement meets the definition of an "insured contract."[101] Accordingly, Arch contends that there is no duty for it to defend or indemnify P.R. Skate, United Rentals or Wal-Mart with respect to the contractual claims of United Rentals or Wal-Mart.[102]

## C.    *P.R. Skate's Arguments in Opposition to Arch's Motion for Summary Judgment and in Further Support of Its Motion for Summary Judgment*

In opposition, P.R. Skate adopts all arguments and evidence cited in support of its cross-motion for summary judgment and its reply brief.[103] In its reply, P.R. Skate contends that Washington law applies to the instant insurance dispute.[104] It further argues that it has standing to assert breach of contract claims based on Arch's denial of the tenders to provide additional insured

---

[98] *Id.* at 18–19.

[99] *Id.* at 19.

[100] *Id.*

[101] *Id.*

[102] *Id.*

[103] Rec. Doc. 221.

[104] Rec. Doc. 266 at 1.

coverage to both United Rentals and Wal-Mart, causing harm to P.R. Skate.[105] According to P.R. Skate, the separation of insureds provision is irrelevant to P.R. Skate's standing to sue on the insurance contract and P.R. Skate has standing to assert breach of contract claims against Arch for its failure to provide additional insured coverage to United Rentals and Wal-Mart.[106]

P.R. Skate also argues that United Rentals and Wal-Mart are additional insureds and that "a reasonable interpretation of the facts alleged regarding the acts or omissions of P.R. Skate or Sartin—regardless of negligence—triggers the application of the Blanket Additional Insured Endorsement."[107] According to P.R. Skate, the Dorsey, Jr. complaint alleges that P.R. Skate rented the scissor list at issue from United Rentals.[108] Thus, P.R. Skate argues that the complaint alleges facts that demonstrate that P.R. Skate's action was a "but for" cause of Plaintiffs' injuries and liability that they allege against United Rentals and Wal-Mart, which triggered additional insured status under the contract.[109] P.R. Skate contends that it should be granted summary judgment as to Arch's breach of the contract through the denial of additional insured status of United Rentals and Wal-Mart.[110]

P.R. Skate next asserts that the insurance policy's Employer's Liability Exclusion does not bar coverage in this case.[111] P.R. Skate contends that Arch's use of the term "worker" in its definition of "subcontractor" in the Employer's Liability Exclusion introduces inherent ambiguity

---

[105] *Id.* at 2.

[106] *Id.* at 3.

[107] *Id.* at 4.

[108] *Id.* at 5 (citing Rec. Doc. 1-2 at 4).

[109] *Id.* (citing *American Best Food, Inc. v. Alea London, Ltd.*, 229 P.3d 693, 696 (Wash. 2010)).

[110] *Id.* at 6.

[111] *Id.*

and potentially writes out of the policy any coverage for bodily injury, not just bodily injury related to employment by an insured.[112] Moreover, P.R. Skate argues that Arch's interpretation of the endorsement renders most of the exclusionary language superfluous, which is contrary to Washington law.[113] P.R. Skate also argues that there is no evidence that Plaintiff's employer was working for P.R. Skate, as Arch suggests,[114] and that despite Arch's arguments to the contrary, the final paragraph of the exclusion does not support Arch's interpretation of the contract.[115]

Next, P.R. Skate argues that Arch's interpretation of the definition of "subcontractor" is incorrect and that the dictionary definition provided in P.R. Skate's opening brief and the common building trade definition cited by the Supreme Court contradict Arch's interpretation.[116] According to P.R. Skate, under Washington law, ambiguity must be resolved against the drafter-insurer and in favor of the insured, and that means that, reading the endorsement as a whole, a worker for the insured and Affordable Painting was not a "subcontractor" of P.R. Skate and the exclusion does not bar coverage for Plaintiff's claims.[117] Finally, P.R. Skate contends that Arch's entire discussion of whether the Wal-Mart contract or United Rentals rental agreement was an "insured contract" is irrelevant, because P.R. Skate does not assert coverage or a duty to defend those claims under an "insured contract" theory.[118]

---

[112] *Id.* at 6–7.

[113] *Id.* at 7.

[114] *Id.* at 8.

[115] *Id.*

[116] *Id.* at 9 (citing *J.W. Bateson Co. v. U.S.*, 434 U.S. 586, 590 (1978)).

[117] *Id.* (citing *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 15 P.3d 115, 122 (Wash. 2000)).

[118] *Id.* at 10.

### D.     P.R. Skate's Sur-Reply in Further Support of Its Motion for Summary Judgment

In its sur-reply, P.R. Skate confirms that pursuant to an agreement among the parties, it "merely seeks determination of whether summary judgment is warranted on P.R. Skate's crossclaim against Arch for breach of contract by breach of the duty to defend P.R. Skate and breach of the contractual duty to accept the additional insured status of United Rentals and Wal-Mart."[119] Thus, P.R. Skate agrees to defer the arguments in Sections III (C), (E), and (F) of its motion and the Court need not consider these arguments.[120] P.R. Skate asserts that if the Court rules in P.R. Skate's favor on the contractual crossclaim, it intends to seek submission of summary judgment on the bad faith crossclaims.[121]

### E.     Arch's Sur-Reply in Response to Reply Filed by P.R. Skate

In its sur-reply, Arch asserts that it never conceded that Washington law applies but that for purposes of the summary judgment motion, it has agreed to assume Washington law would apply.[122] Arch asserts that P.R. Skate cannot assert the rights of putative additional insureds and may only assert claims for damages on behalf of itself.[123] According to Arch, the additional insured language can be triggered if the liability of United Rentals and Wal-Mart was for bodily injury that was caused, in whole or in part, by P.R. Skate or its subcontractor's acts or omissions, and this requirement is not met by the allegations in the original complaint.[124] Arch contends that the original complaint is the operative complaint for purposes of the instant motions, because "Arch

---

[119] Rec. Doc. 267 at 3.

[120] *Id.*

[121] *Id.* at 4.

[122] Rec. Doc. 279 at 1.

[123] *Id.* at 2.

[124] *Id.* at 2–3.

agreed to defend United/Wal-Mart after the amendments of the complaint which brought P.R. Skate in as a party."[125]

Arch asserts that P.R. Skate's argument that its rental of the scissor lift was in the chain of causation between United Rental's negligence and Plaintiff's injuries is unpersuasive.[126] Finally, Arch contends that the term "worker" is defined by the insurance policy and that the definition states that a "subcontractor" is defined as a worker.[127] Thus, according to Arch, Plaintiffs' employer, Affordable Painting, is an entity that is a "worker" and "subcontractor."[128] Arch contends that P.R. Skate's argument that Affordable Painting is a "sub-subcontractor" is unreasonable given the policy language and the exclusion that precludes coverage concerning any subcontractor, not merely first-tier subcontractors.[129]

### F.   *Arch's Reply in Further Support of Its Motion for Partial Summary Judgment*

In its reply to P.R. Skate's opposition, Arch "stipulates to the applicability of Washington law for the insurance coverage dispute with The P.R. Skate."[130]

### III. Law and Analysis

### A.   *Legal Standard for Summary Judgment*

Summary judgment is appropriate when the pleadings, the discovery, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment

---

[125] *Id.* at 3.

[126] *Id.*

[127] *Id.* at 4.

[128] *Id.*

[129] *Id.* at 5.

[130] Rec. Doc. 280 at 1–2.

as a matter of law."[131] When assessing whether a dispute as to any material fact exists, the court considers "all of the evidence in the record but refrains from making credibility determinations or weighing the evidence."[132] All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment."[133] If the record, as a whole, "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of fact exists and the moving party is entitled to judgment as a matter of law.[134] The nonmoving party may not rest upon the pleadings, but must identify specific facts in the record and articulate the precise manner in which that evidence establishes a genuine issue for trial.[135]

The party seeking summary judgment always bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record that it believes demonstrate the absence of a genuine issue of material fact.[136] Thereafter, the nonmoving party should "identify specific evidence in the record, and articulate" precisely how that evidence supports his claims.[137] To withstand a motion for summary judgment, the nonmoving party must

---

[131] Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[132] *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398–99 (5th Cir. 2008).

[133] *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *Little*, 37 F.3d at 1075.

[134] *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).

[135] *See Celotex*, 477 U.S. at 325; *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).

[136] *Celotex*, 477 U.S. at 323.

[137] *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994).

show that there is a genuine issue for trial by presenting evidence of specific facts.[138] The nonmovant's burden of demonstrating a genuine issue of material fact is not satisfied merely by creating "some metaphysical doubt as to the material facts," "by conclusory allegations," by "unsubstantiated assertions," or "by only a scintilla of evidence."[139] Rather, a factual dispute precludes a grant of summary judgment only if the evidence is sufficient to permit a reasonable trier of fact to find for the nonmoving party. Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.[140]

On cross-motions for summary judgment, a court examines each party's motion independently, viewing the evidence and inferences in the light most favorable to the nonmoving party.[141] "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed."[142] Nonetheless, cross-motions for summary judgment may be probative of the absence of a factual dispute when they reveal a basic agreement concerning what legal theories and material facts are dispositive.[143]

---

[138] *Bellard v. Gautreaux*, 675 F.3d 454, 460 (5th Cir. 2012) (citing *Anderson v. Liberty*, 477 U.S. 242, 248–49 (1996)).

[139] *Little*, 37 F.3d at 1075.

[140] *Martin v. John W. Stone Oil Distrib., Inc*., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R .Civ. P. 56(c)(2).

[141] *White Buffalo Ventures, LLC v. Univ. of Tex. at Austin*, 420 F.3d 366, 370 (5th Cir. 2005).

[142] *Joplin v. Bias*, 631 F.2d 1235, 1237 (5th Cir. 1980).

[143] *Bricklayers, Masons & Plasterers Int'l Union of Am., Local Union No. 15, Orlando, Fla. v. Stuart Plastering Co.*, 512 F.2d 1017, 1023 (5th Cir. 1975).

**B.      Applicable Law**

Both parties agree for the purposes of this motion that Washington law applies. Under Washington law, "[i]nsurance policies are to be construed as contracts, and interpretation is a matter of law."[144] Insurance policies are "construed as a whole, and 'should be given a fair, reasonable, and sensible construction' as would be given to the contract by the average person purchasing insurance."[145]

"If policy language is clear and unambiguous, the court may not modify the contract or create an ambiguity."[146] "The entire contract must be construed together in order to give force and effect to each clause."[147] Interpretations that would cause a term to be superfluous are disfavored.[148] However, a court must not "add language to the words of an insurance contract that were not contained in the parties' agreement."[149]

"If terms are defined in a policy, then the term should be interpreted in accordance with that policy definition."[150] "Undefined terms in an insurance contract must be given their 'plain, ordinary, and popular' meaning."[151] To determine the ordinary meaning of an undefined term, a

---

[144] *State Farm Gen. Ins. Co. v. Emerson*, 687 P.2d 1139, 1141–42 (Wash. 1984).

[145] *Grange Ins. Co. v. Brosseau*, 776 P.2d 123, 125 (Wash. 1989) (quoting *Sears v. Grange Ins. Ass'n*, 111 Wash.2d 636, 638, 762 P.2d 1141 (1988)).

[146] *Am. Star Ins. Co. v. Grice*, 854 P.2d 622, 625 (Wash. 1993).

[147] *Stouffer v. Knight & Cont'l Cas. Co.*, 982 P.2d 105, 110 (Wash. Ct. App. 1999) (quoting *Washington Pub. Util. Dist. Utilities Sys. v. Public Util. Dist. No. 1 of Clallam County*, 771 P.2d 701 (Wash. 1989)).

[148] *Am. Agency Life Ins. Co. v. Russell*, 678 P.2d 1303, 1306 (Wash. Ct. App. 1984).

[149] *See Weyerhaeuser Co. v. Aetna Cas. and Surety Co.*, 874 P.2d 142, 154 (Wash. 1994).

[150] *Kitsap Cty. v. Allstate Ins. Co.*, 964 P.2d 1173, 1178 (Wash. 1998).

[151] *Boeing Co. v. Aetna Cas. & Sur. Co.*, 784 P.2d 507, 510 (Wash. 1990) (quoting *Farmers Ins. Co. v. Miller*, 87 Wash.2d 70, 73, 549 P.2d 9 (1976)).

court should look to standard English language dictionaries.[152] If words have both a legal or technical meaning, "it must be clear that both parties to the contract intended that the language have a legal technical meaning."[153] "Otherwise, the words will be given their plain, ordinary meaning."[154]

"An insurance policy provision is ambiguous when it is fairly susceptible to two different interpretations, both of which are reasonable."[155]  However, when the language is ambiguous, the ambiguity must be construed against the insurer, especially where the language concerns exclusions limiting coverage.[156] "[E]xclusions should be construed strictly against the insurer."[157]

The reason for these rules is that "insurance contracts are ordinarily prepared solely by the insurance company."[158] "Presumably the insurer, as drafter, is in a better position to prevent mistakes or ambiguities."[159] The Washington Supreme Court has stated, "It must not be forgotten that the purpose of insurance is to insure, and that the construction should be taken that will render the contract operative rather than inoperative. A construction which contradicts the general purpose of the contract or results in a hardship or absurdity is presumed unintended by the

---

[152] *Id.* (internal citations omitted).

[153] *Id.* at 513 (internal citations omitted).

[154] *McDonald v. State Farm Fire and Cas. Co.*, 837 P.2d 1000, 1004 (Wash. 1992) (citing *Stanley v. Safeco Ins. Co. of Am.*, 747 P.2d 1091 (Wash. 1988)).

[155] *Id.* (internal citations omitted).

[156] *Findlay v. United Pac. Ins. Co.*, 917 P.2d 116, 119 (Wash. 1996).

[157] *Queen City Farms, Inc. v. Central Nat'l Ins. Co.*, 882 P.2d 703, 717 (Wash. 1994).

[158] *Continental Ins. Co. v. PACCAR, Inc.*, 634 P.2d 291, 294 (Wash. 1981).

[159] *Id.*

parties."[160] Accordingly, "[i]nsurance clauses are to be liberally construed to provide coverage whenever possible."[161]

### C.    Analysis

#### 1.    Whether Arch has a Duty to Defend P.R. Skate against Plaintiffs' Claims for Bodily Injury

The first issue before the Court is, whether under the insurance policy issued by Arch to P.R. Skate, Arch has a duty to defend P.R. Skate against Plaintiff's claims or whether, pursuant to the Employer's Liability Exclusion, Plaintiff's claims are excluded from coverage.

The facts relevant to this issue are not in dispute. Arch issued a policy of commercial general liability coverage to P.R. Skate as the named insured, effective November 27, 2013, to November 27, 2014.[162] In 2013, P.R. Skate contracted with Wal-Mart to remodel a Wal-Mart Supercenter in Cut Off, Louisiana.[163] To perform the physical remodeling work at the Wal-Mart Supercenter, P.R. Skate subcontracted with Sartin.[164] Sartin subsequently subcontracted "some or all of its work" to another contractor, Affordable Painting.[165] Plaintiffs were employed by Affordable Painting.[166] Plaintiffs brought claims for bodily injury against P.R. Skate.[167] The insurance policy issued by Arch to P.R. Skate includes an "Employer's Liability Exclusion."[168]

---

[160] *Schroeder v. Royal Globe Ins. Co.*, 659 P.2d 509, 511 (Wash. 1981) (internal citation omitted).

[161] *Odessa School Dist. v. Ins. Co. of America*, 791 P.2d 237, 239 (Wash. Ct. App. 1990).

[162] *See* Rec. Doc. 220-7.

[163] Rec. Doc. 155-3 at 1; Rec. Doc. 220-3 at 1.

[164] *Id.*

[165] Rec. Doc. 155-3 at 1; Rec. Doc. 220-3 at 2.

[166] *Id.*

[167] *See* Rec. Doc. 68 at 2; Rec. Doc. 70 at 3.

[168] *See* Rec. Doc. 220-8.

The Employer's Liability Exclusion in the policy at issue excludes coverage for:

> "Bodily injury" to:
> (1) An "employee" of any insured arising out of and in the course of:
>     a.  Employment by any insured; or
>     b.  Performing duties related to the conduct of any insured's business; or
> (2) The spouse, child, parent, brother or sister of that "employee" as a consequence of paragraph (1) above.
> (3) A "subcontractor" or an "employee" of any "subcontractor."[169]

The Employer's Liability Exclusion includes the following definition of the term "subcontractor":

> For purposes of this exclusion, a "subcontractor" means any worker, including, but not limited to, a temporary worker, casual laborer, borrowed worker, servant or independent contractor, who is not an "employee" of the insured.[170]

The parties do not dispute that sections one and two of the Employer's Liability Exclusion do not apply to the instant matter.[171] Thus, the issue before the Court is whether Arch is required to defend P.R. Skate against Plaintiff's claims or whether Plaintiff's claims for bodily injury are excluded under section three of the exclusion provision, which excludes coverage for bodily injury to a subcontractor or an employee of any subcontractor.

P.R. Skate argues that Plaintiff's[172] claims are covered under its insurance policy with Arch, because the Employer's Liability Exclusion contained in the policy does not apply to Plaintiff's claims.[173] P.R. Skate acknowledges that the exclusion applies to subcontractors or

---

[169] Rec. Doc. 220-8.

[170] *Id.*

[171] *See* Rec. Doc. 151-1 at 11; Rec. Doc. 220-1 at 10.

[172] On January 25, 2016, after the filing of the instant motions, the Court was notified that all parties had reached a settlement with Plaintiff Edward Blair Dorsey, and the Court issued an Order dismissing his case. *See* Civ. A. No. 15-1723, Rec. Doc. 18. Thus, only one Plaintiff remains.

[173] Rec. Doc. 151-1 at 6.

employees of subcontractors but argues that the exclusion does not apply in this case because Plaintiff's employer, Affordable Painting, was a subcontractor of Sartin, not of P.R. Skate.[174] P.R. Skate contends that the term "subcontractor" should be "interpreted to be someone working for the insured, not simply someone who works."[175] According to P.R. Skate, Arch's interpretation of the exclusion provision is too broad and effectively allows for "an exclusion of all liability for any personal injuries."[176]

Arch responds that the Employer's Liability Exclusion precludes coverage for P.R. Skate, because the bodily injury alleged by Plaintiff is to an employee of a subcontractor.[177] According to Arch, the policy's definition of the term "subcontractor" is unambiguous and does not require that a subcontractor relationship exist between P.R. Skate and Plaintiff's employer, Affordable Painting, in order for the exclusion to preclude coverage.[178] Arch notes that another part of the insurance policy, the Exposed Work Area Limitation Endorsement, defines a subcontractor as "any person or organization who is not an 'employee' of the insured and does work or perform services for or on behalf of the insured."[179] Arch argues that this definition included in the Exposed Work Area Limitation Endorsement limits the term "subcontractor" to those performing services on behalf of an insured, but that the definition of "subcontractor" contained in the Employer's Liability Exclusion does not include this limiting language. Instead, Arch points out that the language in the Employer's Liability Exclusion provides for the exclusion of coverage not only

---

[174] *Id.* at 11.

[175] *Id.* at 13.

[176] *Id.* at 15.

[177] Rec. Doc. 220-1 at 9.

[178] *Id.* at 11.

[179] *Id.* at 12.

for employees of a named insured by also for "any other class of worker on a job site."[180] Because the insurance policy excludes coverage for bodily injury claims of employees of subcontractors, Arch argues, there is no duty to defend P.R. Skate with respect to Plaintiff's personal injury claims.[181]

Under Washington law, which the parties agree governs the interpretation of the policy at issue,[182] insurance policies are "to be construed as contracts, and interpretation is a matter of law."[183] "If terms are defined in a policy, then the term should be interpreted in accordance with that policy definition."[184] Moreover, "[i]f the policy language is clear and unambiguous, the court may not modify the contract or create an ambiguity,"[185] and a court must not "add language to the words of an insurance contract that were not contained in the parties' agreement."[186]

An insurance company, as a private contracting entity, is generally permitted to limit the liability it assumes under its policies.[187] In order to avoid liability under a commercial general liability policy, the insurer must show that the loss is excluded by specific policy language.[188] Exclusion clauses should be construed strictly against the insurer.[189] However, the rule of strict construction of exclusions contained in an insurance policy is "merely an aid at arriving at the

---

[180] *Id.* at 12–13.

[181] *Id.* at 14.

[182] *See* Rec. Doc. 266 at 1; Rec. Doc. 280 at 1–2.

[183] *State Farm Gen. Ins. Co. v. Emerson*, 687 P.2d 1139, 1141–42 (Wash. 1984).

[184] *Kitsap Cty. v. Allstate Ins. Co.*, 964 P.2d 1173, 1178 (Wash. 1998).

[185] *Am. Star Ins. Co. v. Grice*, 854 P.2d 622, 625 (Wash. 1993).

[186] *See Weyerhaeuser Co. v. Aetna Cas. and Surety Co.*, 874 P.2d 142, 154 (Wash. 1994).

[187] *See Findlay v. United Pacific Ins. Co.*, 917 P.2d 116, 121 (Wash. 1996).

[188] *See Overton v. Consolidated Ins. Co.*, 38 P.3d 322, 329 (Wash. 2002) (internal citation omitted).

[189] *See Aetna Ins. Co. of Hartford v. Kent*, 540 P.2d 1383, 1386 (Wash. 1975).

intention of the parties to that policy" and is not intended to "override the otherwise apparent clear intention of the parties."[190] Moreover, "plain, explicit language cannot be disregarded, nor an interpretation given the policy at variance with the clearly disclosed intent of the parties."[191]

Here, Plaintiff's complaint alleges that he was an employee of Affordable Painting, "which was a subcontractor of Sartin Builders."[192] The parties do not dispute that Sartin subcontracted work to Affordable Painting and that Plaintiff was an employee of Affordable Painting.[193] P.R. Skate nevertheless contends that the exclusion does not apply to Plaintiff's claims, because Affordable Painting was not subcontracted by P.R. Skate directly.[194] P.R. Skate asserts that Affordable Painting is not a subcontractor covered by the exclusion provision but is instead, a "sub-subcontractor of the insured."[195]

However, the policy language clearly and unambiguously states that the exclusion applies to an employee of *any* subcontractor,[196] not just employees of those subcontractors who have direct contractual relationships with the insured. Where, as here, the policy language is clear and unambiguous, under Washington law, the Court "may not modify the contract or create an ambiguity,"[197] nor may the Court "add language to the words of an insurance contract that were

---

[190] *Id.*

[191] *Davis v. North Am. Acc. Ins. Co.*, 254 P. 722, 726 (Wash. 1953).

[192] Rec. Doc. 1-2.

[193] *See* Arch's "Statement of Undisputed Facts," Rec. Doc. 220-3 at 2 (stating that "Sartin subsequently subcontracted some or all of its work to another contractor, Affordable Painting" and "[b]oth Plaintiffs . . . were employed by Affordable Painting"); P.R. Skate's "Statement of Material Facts Presenting No Genuine Issue," Rec. Doc. 155-3 at 1 (stating that "Sartin subsequently subcontracted some or all of its work to another contractor, Affordable Painting" and "[b]oth Plaintiffs . . . were employed by Affordable Painting").

[194] *See* Rec. Doc. 151-1 at 6.

[195] Rec. Doc. 266.

[196] Rec. Doc. 220-8.

[197] *Am. Star Ins. Co. v. Grice*, 854 P.2d 622, 625 (Wash. 1993).

not contained in the parties' agreement."[198] Acceptance of P.R. Skate's interpretation of the exclusion provision would require the addition of language to the words of the insurance contract that were not contained in P.R. Skate and Arch's agreement.[199]

The Employer's Liability Exclusion includes a definition of the term "subcontractor."[200] The Court must interpret the term "subcontractor" in accordance with that policy definition.[201] The Court notes that P.R. Skate's proposed interpretation of the definition of subcontractor is in fact found in another part of the insurance policy at issue, the Exposed Work Area Limitation Endorsement. In that provision, the parties defined the term "subcontractor" as any person or organization who is not an employee of an insured and "does work or performs services for or on behalf of an insured."[202] This suggests that the parties contemplated and executed a contractual provision that more narrowly defines the term "subcontractor," and explicitly agreed to a broader definition in the exclusionary provision at issue here. In essence, P.R. Skate requests that the Court apply a similarly narrow definition here, even though the Employer's Liability Exclusion contains a broader definition of the term "subcontractor" than that contained in another part of the contract. Reading the contract as a whole, however, the added language in the Exposed Work Area Limitation Endorsement further supports the conclusion that the parties intended that the term "subcontractor" to be defined more broadly in the context of the Employer's Liability Exclusion.[203]

---

[198] *Weyerhaeuser Co. v. Aetna Cas. and Surety Co.*, 874 P.2d 142, 154 (Wash. 1994).

[199] *See id. See also Truck Ins. Exchange v. BRE Props., Inc.*, 81 P.3d 929, 932 (Wash. Ct. App. 2003).

[200] *See* Rec. Doc. 220-8 ("For purposes of this exclusion, a 'subcontractor' means any worker, including, but not limited to, a temporary worker, casual laborer, borrowed worker, servant, or independent contractor, who is not an 'employee' of the insured.").

[201] *Kitsap Cty. v. Allstate Ins. Co.*, 964 P.2d 1173, 1178 (Wash. 1998).

[202] *See* Rec. Doc. 220-7.

[203] Rec. Doc. 220-8. *See also Aetna Ins. Co. of Hartford v. Kent*, 540 P.2d 1383, 1386 (Wash. 1975) (holding that the rule of liberal construction of exclusions contained in an insurance policy is "merely an aid at arriving at the

Accordingly, the Court finds P.R. Skate's argument that the Employer's Liability Exclusion should be limited only to subcontractors of P.R. Skate, *i.e.* the insured, unpersuasive. Nothing in the provision limits its application to subcontractors of the insured, and the provision is worded broadly such that a subcontractor of a subcontractor would be excluded from coverage as "any subcontractor."[204] P.R. Skate has not offered any explanation as to why the Employer's Liability Exclusion, which defines a subcontractor using broader language than the language contained in the Exposed Work Area Limitation, should be given the same effect. Under Washington law, all of the provisions in an insurance contract will be reviewed together so that each will have its intended force and effect.[205] To accept P.R. Skate's interpretation would go against this principle and would fail to give effect to the plain language in each provision of the insurance policy in light of the whole contract.[206]

P.R. Skate also argues that the term "worker" in the exclusion's definition of the term "subcontractor" creates ambiguity.[207] P.R. Skate contends that "[w]ithout further reference to the policy for context," the term "worker" could include "anyone who is not employed . . . unrelated

---

intention of the parties to that policy" and should not "be applied to override the otherwise apparent clear intention of the parties").

[204] *See Am. States Ins. Co. v. Delean's Tile and Marble,* LLC, 319 P.3d 38, 43 (Wash. Ct. App. 2013) (holding that exclusion precluded claim arising from faulty work of subcontractor on multiple unit walkways where broad language of exclusion's definition of "construction operations" included conversion of the building to . . . any other type of multiple unit residential structure"). *Cf. Truck Ins. Exchange v. BRE Props., Inc.*, 81 P.3d 929, 933 (Wash. App. Ct. 2003) (rejecting insurer's argument that employer's liability exclusion limiting coverage for employees of "the insured" should be interpreted broadly to limit coverage for employees of "any insured.").

[205] *See Moeller v. Farmers Ins. Co. of Washington*, 267 P.3d 998, 1001 (Wash. 2011) (en banc) (citing *Allstate Ins. Co. v. Peasley*, 932 P.2d 1244 (1997)).

[206] *See Certification from United States Dist. Ct. ex rel. Western Dis. of Washington v. GEICO Ins. Co.*, 366 P.3d 1237, 930 (2016) ("The court views an insurance contract in its entirety, does not interpret a phrase in isolation, and gives effect to each provision.") (internal citation omitted). *Cf. Aetna Ins. Co. of Hartford v. Kent*, 540 P.2d 1383, 1386 (Wash. 1975) (comparing two policies issued by the insurer to the insured and finding that the differing language in the policies evidenced an intention that one policy provide liability coverage of a kind that the other policy excluded).

[207] Rec. Doc. 155-1 at 12.

to the job, who wanders onto the jobsite and gets injured."[208] However, under Washington law, the Court does not construe a term in a vacuum without reference to the rest of the policy for context. Rather, insurance policies are "construed as a whole and 'should be given a fair, reasonable, and sensible construction . . . .'"[209] The Court notes that employee and contractor exclusions are not uncommon in commercial general liability policies and that the purpose of such exclusions is to eliminate redundant coverage for injury which is covered by workers' compensation or other liability policies.[210] A "fair, reasonable, and sensible" construction of the insurance contract as a whole indicates that provision operates to exclude bodily injury claims of several classes of workers from coverage—not to exclude coverage for bodily injury claims generally. P.R. Skate's attempt to create an ambiguity by interpreting the word "worker" without reference to the policy for context does not change the clear and unambiguous language of the exclusion, which excludes coverage for an employee of *any* subcontractor.[211]

As stated above, in the Employer's Liability Exclusion, "subcontractor" is broadly defined to include "any worker . . . who is not an 'employee' of the insured," and the provision specifically identifies an "independent contractor" as a type of "worker" for the purposes of the exclusion. Here, both parties have explicitly stated that Sartin "subsequently *subcontracted* some or all of its

---

[208] *Id.*

[209] *Grange Ins. Co. v. Brosseau*, 776 P.2d 123, 125 (Wash. 1989) (quoting *Sears v. Grange Ins. Ass'n*, 111 762 P.2d 1141 (Wash. Ct. App. 1988)). *See also Castle & Cooke, Inc. v. Great Am. Ins. Co.*, 711 P.2d 1108, 1110 (Wash. Ct. App. 1986);*Mercer Place Condominium Ass'n v. Agora Syndicate, inc.*, 17 P.3d 626, 629 (Wash. Ct. App. 2000).

[210] *See* BRUNER AND O'CONOR ON CONSTRUCTION LAW § 11:306 (2016) (noting the frequency of employee and independent contractor exclusions in commercial general liability policies and observing that "[t]he incorporation of 'independent contractor' exclusions and broad 'employee'exclusions operate to eliminate bodily coverage for a great variety of worker and invitee injuries . . . ."). *See also* INSURANCE COVERAGE OF CONSTRUCTION DISPUTES § 13:1 (2d ed.) (2016) (stating that the purpose of the employers liability exclusion is to eliminate "redundant coverage" for injury and damage which is covered by workers' compensation or other liability policies).

[211] *See Grange Ins. Co.*, 776 P.2d at 125; *Am. Star Ins. Co. v. Grice*, 854 P.2d 622, 625 (Wash. 1993) ("If policy language is clear and unambiguous, the court may not . . . create an ambiguity.").

work to another *contractor*, Affordable Painting."[212] Moreover, it is undisputed that Plaintiff is an employee of Affordable Painting, and that Affordable Painting is not an "employee of the insured." Thus, pursuant to the plain language of the Employer's Liability Exclusion, Affordable Painting is a "subcontractor," and Plaintiff is an "employee" of a "subcontractor." Therefore, because Employer's Liability Exclusion clearly and unambiguously precludes coverage for "bodily injury" to "an employee of *any* subcontractor,"[213] the Court finds that the exclusion applies.

Under Washington law, the duty to defend "arises when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage."[214] Where the alleged claim is "clearly not covered by the policy," however, an insurer is relieved of its duty to defend.[215] Here, as the Court found *supra*, Plaintiff's claim is clearly not covered by the policy pursuant to the specific policy language found in the Employer's Liability Exclusion.[216] Therefore, even construing Plaintiff's complaint liberally, the Court finds that the undisputed facts in the record indicate that Arch does not have a contractual duty to defend P.R. Skate against Plaintiff's claims. Accordingly, the Court finds there are no genuine disputes of material fact and summary judgment in favor of Arch and against P.R. Skate on this issue is appropriate.

---

[212] *See* Arch's "Statement of Undisputed Facts," Rec. Doc. 220-3 at 2 (stating that "Sartin subsequently subcontracted some or all of its work to another contractor, Affordable Painting" and "[b]oth Plaintiffs . . . were employed by Affordable Painting") (emphasis added); P.R. Skate's "Statement of Material Facts Presenting No Genuine Issue," Rec. Doc. 155-3 at 1 (stating that "Sartin subsequently subcontracted some or all of its work to another contractor, Affordable Painting" and "[b]oth Plaintiffs . . . were employed by Affordable Painting").

[213] Rec. Doc. 220-8 (internal quotation marks omitted).

[214] *Truck Ins. Exch. v. VanPort Homes, Inc.*, 58 P.3d 276, 281 (Wash. 2002) (citing *Hayden v. Mut. of Enumclaw Ins. Co.*, 1 P.3d 1167, 1171 (Wash. 2000)).

[215] *Id.* (citing *Kirk v. Mt. Airy Ins. Co.*, 687 P.2d 456 (1980)). *See also Stouffer & Knight v. Continental Cas. Co.*, 96 Wash. App. 741 (Wash. Ct. App. 1999) (holding that coverage for claim under malpractice insurance policy for employee's embezzlement of client funds was precluded under plain language of employee exclusion).

[216] *Overton v. Consolidated Ins. Co.*, 38 P.3d 322, 329 (Wash. 2002) (internal citation omitted).

    **2.**      **Whether Arch has a Duty to Defend United Rentals and Wal-Mart as Additional Insureds under the Blanket Additional Insured Endorsement**

The second issue before the Court is whether, under the insurance policy issued by Arch to P.R. Skate, Arch has a duty to defend United Rentals and Wal-Mart as additional insureds. "It is common practice in the construction industry for owners to require contractors to name them as additional insureds under their [commercial general liability insurance] policies."[217] "A common approach in the construction industry is for a contractor or subcontractor to obtain a policy endorsement that automatically confers additional insured status upon anyone with whom the named insured has agreed in writing to provide additional insured coverage. Such an endorsement is known as a 'blanket additional insured' endorsement."[218]

The facts relevant to this issue are not in dispute. Arch issued a policy of commercial general liability insurance to P.R. Skate, which listed P.R. Skate as the named insured, effective November 27, 2013, to November 27, 2014.[219] The policy included an additional insured endorsement, titled "Blanket Additional Insured Endorsement."[220] The endorsement states, in pertinent part:

> SECTION II—WHO IS AN INSURED is amended to include as an additional insured those persons or organizations who are required under a written contract with you to be named as an additional insured, but only with respect to liability for "bodily injury," "property damage," or "personal and advertising injury" caused, in whole or in part, by your acts or omissions or the acts or omissions of your subcontractors:
>
>     a.   In the performance of your ongoing operations or "your work," including "your work" that has been completed; or

---

[217] Bruner & O'Conner Construction Law § 11:322 (2016).

[218] *Id.* at § 11:328.

[219] *See* Rec. Doc. 220-7.

[220] Rec. Doc. 220-9 at 1.

b.   In connection with your premises owned by or rented to you.[221]

In 2013, P.R. Skate contracted with Wal-Mart Stores to remodel a Wal-Mart Supercenter in Cut Off, Louisiana.[222] The contract between Wal-Mart Stores and P.R. Skate included a provision which required P.R. Skate to name Wal-Mart Stores and "its subsidiaries, affiliates, officers, directors, employees and agents as 'additional insureds'" under P.R. Skate's commercial general liability insurance.[223]

On April 11, 2014, P.R. Skate rented a scissor lift from United Rentals.[224] The rental agreement required P.R. Skate to make United Rentals an additional insured under P.R. Skate's commercial general liability insurance.[225] On April 19, 2014, Plaintiffs were injured when they both fell from the scissor lift, which United Rentals had rented to P.R. Skate.[226]

By letter dated October 10, 2014, United Rentals tendered its defense of Plaintiffs' claims to Arch.[227] Arch subsequently denied United Rentals' tender.[228] On May 29, 2015, United Rentals filed a third-party complaint against P.R. Skate and Arch alleging that P.R. Skate and Arch breached their contractual obligation to United Rentals by failing to reimburse United Rentals for

---

[221] *Id.*

[222] Rec. Doc. 155-3 at 1; Rec. Doc. 220-3 at 1.

[223] Rec. Doc. 155-3 at 1; Rec. Doc. 155-4 at 15.

[224] Rec. Doc. 155-3 at 2; Rec. Doc. 155-4 at 141–43.

[225] Rec. Doc. 155-3 at 1; Rec. Doc. 155-4 at 142.

[226] Rec. Docs. 56, 70.

[227] Rec. Doc. 155-3 at 2; Rec. Doc. 155-4 at 144–45.

[228] Rec. Doc. 155-3 at 2.

its defense costs and by refusing to acknowledge their contractual indemnity and defense obligations.[229]

P.R. Skate also tendered defense and indemnity for Plaintiffs' claims to Arch on behalf of Wal-Mart.[230] However, Arch denied the tender of defense on behalf of Wal-Mart.[231] Thereafter, P.R. Skate accepted the defense of Wal-Mart.[232] By letter dated March 7, 2016, Arch accepted the defense of Wal-Mart under a reservation of rights, from October 6, 2015.[233] By letter dated March 7, 2016, Arch accepted the defense of United Rentals under a reservation of rights, but only from November 3, 2015.[234]

### a.   *Standing*

As a preliminary matter, Arch argues that P.R. Skate does not have standing to raise its claim that Arch breached its contractual duty to P.R. Skate to defend United Rentals and Wal-Mart as additional insureds under the insurance policy.[235] Arch maintains that it contracted with P.R. Skate to include the additional insured endorsement on the policy, and whether the policy provides coverage to an insured is between Arch and the putative insureds, United Rentals and Wal-Mart.[236] P.R. Skate asserts that it has standing to bring this claim because Arch's breach of the insurance

---

[229] Rec. Doc. 10.

[230] Rec. Doc. 155-3 at 3.

[231] *Id.*

[232] *Id.*

[233] *Id.* at 4.

[234] *Id.*

[235] Rec. Doc. 220-1 at 15.

[236] *Id.* at 15.

policy harmed P.R. Skate by causing United Rentals to sue P.R. Skate and by obligating P.R. Skate to accept Wal-Mart's tender of defense to avoid being sued by Wal-Mart.[237]

Under Article III of the United States Constitution, federal courts only have jurisdiction over "cases" or "controversies."[238] One requirement to have a "case" or "controversy" is that the plaintiff must have standing to sue.[239] "The standing inquiry focuses on whether the plaintiff is the proper party to bring this suit[.]"[240] The plaintiff must show that it has a "personal stake" in the dispute, and that the injury alleged in the complaint is particularized as to him.[241] To establish standing, the plaintiff must show: (1) it suffered an "injury in fact," which is a "concrete and particularized invasion of a legally protected interest" that is actual or imminent, and not conjectural or hypothetical; (2) there is a causal connection between the alleged harm and the defendant's conduct, such that the injury is fairly traceable to the challenged action rather than the result of a third party's independent action; and (3) it is likely, rather than merely speculative, that a favorable decision will redress the injury.[242] Under Washington law, a party to a contract may bring a breach of contract claim.[243]

---

[237] Rec. Doc. 155-1 at 22.

[238] U.S. Const. art. III, § 2, cl. 1; *see Raines v. Byrd*, 521 U.S. 811, 818 (1997); *Hollis v. Lynch*, 827 F.3d 436, 441 (5th Cir. 2016).

[239] *Hollis*, 827 F.3d at 441.

[240] *Raines*, 521 U.S. at 818 (*Simon v. Eastern Ky. Welfare Rights Organization,* 426 U.S. 26, 37 (1976)).

[241] *Id.* at 819 (citing *Lujan,* 504 U.S. at 560–561); *see also Bender v. Williamsport Area School Dist.,* 475 U.S. 534, 543–544 (1986) (holding that a member of the school board who "has no personal stake in the outcome of the litigation" had no standing).

[242] *Lujan,* 504 U.S. at 560–61; *Hollis*, 827 F.3d at 441.

[243] *Brummett v. Washington's Lottery*, 288 P.3d 48, 55 (Wash. Ct. App. 2012). A third party beneficiary to a contract may also bring a breach of contract claim. *Id.*

Here, it is undisputed that P.R. Skate is the named insured and a party to the insurance policy. In the contract between Arch and P.R. Skate, Arch agreed to defend those who P.R. Skate is required "under a written contract . . . [to name] as an additional insured."[244]  It is also undisputed that there was a written contract between P.R. Skate and United Rentals and a written contract between P.R. Skate and Wal-Mart requiring that P.R. Skate name them as additional insureds. P.R. Skate alleges that P.R. Skate suffered an injury as a result of Arch's breach of contract. Specifically, P.R. Skate alleges that it suffered an injury when United Rentals sued P.R. Skate because Arch declined to defend United Rentals.[245] P.R. Skate also asserts that it suffered an injury by accepting Wal-Mart's tender of defense to avoid being sued by Wal-Mart.[246] Thus, the Court finds that it suffered a concrete and particularized injury in fact as required to establish standing.[247] Moreover, the Court finds that there is a causal connection between P.R. Skate's alleged harm and Arch's conduct because P.R. Skate would not have suffered the alleged harm but for Arch's denial of United Rentals and Wal-Mart's tenders of defense. Further, it is likely that a favorable decision will redress the injury. Accordingly, the Court concludes that P.R. Skate has standing to bring this claim.

### b.     *Coverage under the Blanket Additional Insured Endorsement*

Next, while it is undisputed that the insurance policy included a Blanket Additional Insured Endorsement requiring Arch to defend additional insureds, the parties dispute when Arch's duty to defend United Rentals and Wal-Mart first arose. P.R. Skate asserts that the duty to defend arose

---

[244] Rec. Doc. 220-9 at 1.

[245] Rec. Doc. 65 at 3.

[246] Rec. Doc. 155-3 at 3.

[247] *Lujan,* 504 U.S. at 560–61; *Hollis*, 827 F.3d at 441.

when Plaintiffs originally filed suit and United Rentals and Wal-Mart made tenders to Arch.[248] Arch contends that the duty to defend did not arise with respect to Wal-Mart until October 6, 2015, the date that the first amended complaint was filed adding Wal-Mart as a defendant, and the duty to defend did not arise with respect to United Rentals until November 3, 2015, the date that the second amended complaint was filed adding P.R. Skate as a defendant.[249] Arch argues that it did not have a duty to defend United Rentals and Wal-Mart under the original complaints because the additional insured endorsement applies "only with respect to liability for 'bodily injury' . . . caused, in whole or in part, by [P.R. Skate's] acts or omissions or the acts or omissions of [P.R. Skate's] subcontractors . . . ."[250] Because the original complaints alleged that the "sole and proximate cause of the injuries and damages sustained by [Plaintiffs'] was the negligence of the defendant, United Rentals," Arch argues that it did not have a duty to defend United Rentals and Wal-Mart until the complaints were amended to allege the negligence of P.R. Skate.[251]

P.R. Skate contends that Arch's position is incorrect.[252] P.R. Skate asserts that the additional insured endorsement requires that the injury be caused by its acts, not its negligent acts.[253] P.R. Skate avers that it acted when it rented the scissor lift for use at the Wal-Mart Supercenter in Cut Off, Louisiana.[254] According to P.R. Skate, while this act was not negligent,

---

[248] Rec. Doc. 155-1 at 19.

[249] Rec. Doc. 220-1 at 15.

[250] *Id.* at 16.

[251] *Id.*

[252] Rec. Doc. 155-1 at 19.

[253] *Id.* at 20.

[254] *Id.* at 21.

but for that act, Plaintiffs' "accident would not have happened and neither United Rentals nor Wal-Mart would be facing any liability for it."[255]

"An insurer's duty to defend is broader than its duty to indemnify."[256] The duty to defend "arises when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage."[257] An insurer is not relieved of its duty to defend unless the claim alleged in the complaint is "clearly not covered by the policy."[258] If a complaint is ambiguous, a court will construe it liberally in favor of "triggering the insurer's duty to defend."[259] "In sum, the duty to defend is triggered if the insurance policy conceivably covers the allegations in the complaint, whereas the duty to indemnify exists only if the policy actually covers the insured's liability."[260] "The insurer may not rely on facts extrinsic to the complaint to deny the duty to defend—it may do so only to trigger the duty."[261] In *Woo v. Fireman's Fund Insurance Company*, the Washington Supreme Court stated:

> There are two exceptions to the rule that the duty to defend must be determined only from the complaint, and both the exceptions favor the insured.  First, if it is not clear from the face of the complaint that the policy provides coverage, but coverage could exist, the insurer must investigate and give the insured the benefit of the doubt that the insurer has a duty to defend. Notice pleading rules, which require only a short and plain statement of the claim showing that the pleader is entitled to relief, impose a significant burden on the insurer to determine if there are any facts in the pleadings that could conceivably give rise to a duty to defend. Second, if the allegations in the complaint conflict with facts known to or readily

---

[255] *Id.*

[256] *Truck Ins. Exch. v. VanPort Homes, Inc.*, 58 P.3d 276, 281 (Wash. 2002) (citing *Hayden v. Mut. of Enumclaw Ins. Co.*, 1 P.3d 1167, 1171 (Wash. 2000)).

[257] *Id.* at 281–82 (quoting *Unigard Ins. Co. v. Leven*, 983 P.2d 1155, 1160 (Wash. Ct. App. 1999) (internal quotation marks omitted)).

[258] *Id.* at 282.

[259] *Id.*

[260] *Woo v. Fireman's Fund Ins. Co.*, 164 P.3d 454, 459 (Wash. 2007).

[261] *Id.*

ascertainable by the insurer, or if the allegations . . . are ambiguous or inadequate, facts outside the complaint may be considered.  The insurer may not rely on facts extrinsic to the complaint to deny the duty to defend—it may do so only to trigger the duty.[262]

P.R. Skate relies on *Weyerhaeuser Co. v. Aetna Casualty and Surety Co.*, a Washington Supreme Court case, to support the proposition that where "the policy language does not require an adversarial claim or a third party threat or a formal threat of legal action" courts will not interpret a policy to require that a claim be filed before the duty to defend arises.[263] In *Weyerhaeuser* the Washington Supreme Court considered whether there could "be insurance coverage under a Comprehensive General Liability (CGL) policy for property damage when the policyholder has incurred environmental cleanup costs pursuant to statute, but where the involved government environmental agency has not made an overt threat of formal legal action."[264]  The policy language provided that the insurance company would indemnify the insured "for all sums which the [insured] shall be obligated to pay by reason of the liability, imposed upon the [insured] by law . . . for damages . . . on account of property damage."[265] The policy did "not specify whether this liability must be imposed by formal legal action (or threat of such) or by a statute which imposes liability."[266] The Washington Supreme Court reasoned that coverage was triggered absent a claim because "[t]here is nothing in the insurance policy language which requires a 'claim' or an overt threat of legal action and . . . [i]f the insurers intended to provide coverage only if there were a

---

[262] *Id.* (internal citations and quotation marks omitted).

[263] Rec. Doc. 155-1 at 20 (citing *Weyerhaeuser*, 874 P.2d at 154).

[264] *Weyerhaeuser*, 874 P.2d at 145.

[265] *Id.* at 145–46.

[266] *Id.* at 154.

lawsuit or a threat of such, that requirement could have been included in the policy."[267] The court stated that it would not "add language to the words of an insurance contract that are not contained in the parties' agreement."[268]

Although *Weyerhaeuser* stands for the proposition that the duty to defend may arise before a claim is filed, P.R. Skate does not argue that the duty to defend arose at some point prior to the filing of the original complaints. Instead, P.R. Skate asserts that the duty to defend arose with the filing of the original complaints. The blanket additional insured endorsement provides additional insurance coverage to "those persons or organizations who are required under a written contract with [P.R. Skate] to be named as additional insureds, but only with respect to liability for 'bodily injury' . . . caused, in whole or in part, by [P.R. Skate's] acts or omissions or the acts or omissions of [P.R. Skate's] subcontractors. . . ."[269]

Plaintiffs' original complaints alleged that "[t]he sole and proximate cause of [their] injuries and damages sustained . . . was the negligence of the defendant, United Rentals. . . ."[270] However, Plaintiffs' original complaints alleged P.R. Skate acted when it rented the scissor lift for use at the Wal-Mart Supercenter in Cut Off, Louisiana.[271] Under the allegations presented in the original complaints, but for P.R. Skate's act, Plaintiffs' accident would not have happened. Therefore, construing the original complaints liberally, the Court finds that the duty to defend under the Blanket Additional Insured Endorsement was triggered when the original complaints were filed because the original complaints alleged facts which could, if proven, have shown that

---

[267] *Id.*

[268] *Id.*

[269] *Id.* at 20.

[270] Rec. Doc. 1-2 at 5; Civ. A. No. 15-1723, Rec. Doc. 1-2 at 5.

[271] Rec. Doc. 1-2 at 4; Civ. A. No. 15-1723, Rec. Doc. 1-2 at 4.

Plaintiffs' bodily injuries were caused, in whole or in part, by P.R. Skate's acts or omissions.[272] Accordingly, the Court finds that there is no genuine issue of material fact and P.R. Skate is entitled to judgment as a matter of law on its claim that Arch breached its contract by failing to defend United Rentals and Wal-Mart under the Blanket Additional Insured Endorsement.

Finally, Arch argues that the insurance policy excludes coverage for bodily injury claims which P.R. Skate "may be obligated to pay by reason of the assumption of liability in a contract agreement unless the assumption of liability was part of the 'insured contract' under the policy."[273] However, P.R. Skate asserts that it does not assert coverage under this provision of the insurance policy.[274] Accordingly, the Court need not reach this issue.

## IV. Conclusion

Based on the foregoing, the Court finds that the undisputed facts in the record indicate that Arch does not have a contractual duty to defend P.R. Skate against Plaintiff's claims because Plaintiff's claims are precluded from coverage under the clear and unambiguous language of the Employer's Liability Exclusion of the insurance policy at issue. The Court also finds that the undisputed facts in the record indicate that P.R. Skate is entitled to judgment as a matter of law on its claim that Arch breached its contract by failing to defend United Rentals and Wal-Mart under the Blanket Additional Insured Endorsement. Accordingly,

**IT IS HEREBY ORDERED** that Arch's "Cross-Motion for Partial Summary Judgment as to the Declaratory Judgment and Cross-Claim of the P.R. Skate, L.L.C."[275] is **GRANTED IN**

---

[272] *Truck Ins. Exch.*, 58 P.3d 276 at 281–82 (quoting *Unigard*, 983 P.2d at 1160).

[273] Rec. Doc. 220-1 at 19.

[274] Rec. Doc. 266 at 10.

[275] Rec. Doc. 220.

**PART AND DENIED IN PART.** Arch's motion is **GRANTED** to the extent that it seeks summary judgment on the issue of whether it has a duty to defend P.R. Skate against Plaintiff's claims for bodily injury. It does not. Arch's motion is **DENIED** in all other respects.

 **IT IS FURTHER ORDERED** that P.R. Skate's "Motion for Summary Judgment of Liability Against Arch Specialty Insurance Company"[276] is **GRANTED IN PART AND DENIED IN PART.** P.R. Skate's motion is **GRANTED** to the extent that it seeks summary judgment on its claim that Arch breached its contract by failing to defend United Rentals and Wal-Mart under the Blanket Additional Insured Endorsement. P.R. Skate's motion is **DENIED** in all other respects.

 **NEW ORLEANS, LOUISIANA,** this <u>15th</u> day of February, 2017.

        *Nannette Jolivette Brown*
        **NANNETTE JOLIVETTE BROWN**
        **UNITED STATES DISTRICT JUDGE**

---

[276] Rec. Doc. 155.